# N. Y. SUPERIOR COURT.

## WILLIAM J. O'REILLY and Others agt, JAMES FREEL.

On a motion to *vacate an attachment*, where the whole evidence, contained in the affidavits on both sides, show that the plaintiff could not have known the facts to which he swore positively in the affidavit on which the warrant of attachment was obtained, therefore there being no preponderance of evidence to sustain it, the attachment must be *discharged*.

In this case, the court considered that there might be evidence enough before it to establish that the defendant intended to retain control of his property, as long as the indulgence of his creditors and the law. might permit; that he had found or would find it difficult to meet all his engagements as they had become or might become due; that he had made promises to pay which he had broken, and perhaps that he was in a precarious situation, if pressed by his creditors.

But there was no such evidence before the court, of hurry, secresy and sacrifice in the disposition of his property as to warrant the deduction that he intended to withdraw from the grasp of the law his property, when his creditors are in a position to seize it. Until then he is the owner and entitled to dispose of it as he thinks proper, provided he does not violate any positive law.

*Special Term, April,* 1867.

MOTION by defendant to vacate a warrant of attachment.

T. BRENNAN and JOHN MCKEON, *for motion.*

T. B. ELDRIDGE *opposed.*

ROBERTSON, Ch. J. The 227th section of the Code authorizes the issuing of an attachment against the property of a defendant, who, in general terms, has absconded or concealed himself, or has disposed of or secreted, or is about to dispose of or secrete, his property with intent to defraud creditors. The 229th section provides more specifically that a warrant may be issued whenever it appears by affidavit that the defendant has departed from this state with intent to defraud his creditors, or to avoid the service of a summons, or to keep himself concealed therein with like intent, or that he has removed, or is about to remove, any of his prop-

O'Reilly agt. Freel.

erty from this state, or has disposed of or secreted any of his property with like intent. As such last section reads, a departure of the defendant from this state, with any one of these intents, to wit: either to defraud his creditors, avoid the service of a summons, or keep himself concealed within this state, is sufficient to justify an attachment. Nothing can be implied in so summary a proceeding, and therefore the word "kept" cannot be substituted for "keep." If so the provision is contradictory as to such keeping concealed in the state, when he has departed from it. But even if the provision allowed an attachment where a defendant was concealed in this state, I think the affidavits on which this attachment was granted contained no evidence of such concealment, and if they did they were fully met and disposed of by the affidavits of disinterested parties; so that the attachment cannot be sustained on that ground, and unless it can be upon the ground of a past disposition, or an intended disposition of goods to defraud creditors, it must fail.

The action is on a promissory note for over $900; dated in October last, and goods sold in November and December amounting to nearly two hundred. Before such goods were bought, as one of the plaintiffs deposed in an affidavit on which the attachment was granted, the defendant applied to them representing that he had a cash capital of $10,000 in his business, owed no borrowed money, was doing a good business; was a single man with merely nominal expenses, owed no bills past due, was able to meet all his bills, amounting to $2,000, and had a stock of goods in his store amounting to $15.000 at its cost price. Two days after such note became due, being the 22d of February last, the defendant had in his store goods of the value of $15,000, and now has goods valued at $5,000. The defendant has not, within forty days, paid any of his bills, but has allowed all his paper to go to dishonor for non-payment, although selling his goods below actual cost, to deponent's certain knowledge, thereby inducing a run upon his store by custo-

mers; is largely in debt and refuses to make any provision for the payment of his debts, although his stock of goods is disappearing. Such debts, past due, amount to $10,000, many of which have been due for thirty days. His average daily sales for thirty days have been $200 each day, no part of which has been applied to the payment of his debts, and the deponent was informed by a clerk, of the defendant (McGowan) that the defendant was selling everything paying nothing, and evidently preparing to go out of business. The names of some creditors are given, and a statement of the defendant that he has paid $S00 to one of them (Weeks) is sworn to have been denied by such creditor. There is a general charge that the defendant has disposed of, is disposing, and about to dispose of his property to defraud his creditors, which of course amounts to nothing (*Furman* agt. *Walter*, 13 *How. Pr. Rep.*, 349), as it is for the court, not the creditor, to say whether facts proved to exist establish such disposition and intent.

Such affidavit of the plaintiff does not state the nature of the inspection which enabled him to pass upon the value of the goods in the store, or how he knew that the defendant had not for forty days paid any of his bills, or had allowed his paper to be dishonored, or what the cost of his goods was, and that he was selling them below it for three weeks, or how much he was in debt, or when his debts were due, or what the average daily sales of the defendant were, or that the proceeds of such sales were not appropriated to the payment of his debts. As the possession of such knowledge by any one who was not with the defendant, night and day, is almost impossible, it seems incredible, and a strong shade of suspicion is cast over the reliability of the statements. Such things may all have been true, but the party testifying does not shield himself from the charge of perjury thereby, if he did not know them to be true They may have been stated in that positive way to avoid the difficulty of stating them on information and belief, which would not

O'Reilly agt: Freel.

warrant the issuing of an attachment. [*See cases cited in note* (d) § 229 *of Code of Proc.* (*Voorh. Ed.,* 1864); *p.* 148.] But if made only as the result of information and belief, the party making such statement under oath incurred the penalties of perjury, if they were material, and they were only so if they tended to prove a previous or an intended fraudulent disposition of the goods, which I propose to consider.

It is conceded by such affidavit that except as to selling below cost, the sales were made in the ordinary course of business, and at the rate of $200 a day for thirty days, which would amount to $6,000. Yet, on the 12th of March, the day of making the affidavit, it states the stock of goods to be $4,000, while on the 25th of February, (two days after the note became due,) it was $9,000, making a disappearance of $5,000 in fifteen days—being at the rate of $333 a day. The fact that the defendants' creditors resident in the city of New York, to whom $10,000 are due, and some of whose claims have been over thirty days due, have not interfered with his regular business by judgment and execution, would tend to show that such creditors were still willing to trust to his future success, and his failure to pay them is certainly not a matter of which the plaintiffs can avail themselves.

The fact to be established is not mere inability or failure to pay, but an unlawful disposition of property to avoid such payment. Embarrassment owing to the pressure of creditors may characterize secret, swift and wholesale disposition of property, or other circumstances of concealment, so as to infer an intention to defraud. But in case of a non-interference by creditors, the amount of sales of goods in an ordinary way over a counter to casual customers, even below cost, is very faint evidence of an intent to defraud by such disposition of them. The amount of rebate from the cost in such sales is not given, so that any very strong inference from that circumstance is prevented.

Upon the whole, therefore, there was perhaps, just enough of possibility of knowledge by the plaintiff, Stephen O'Reilly, of the facts to which he swore positively, and enough of room for the inference that the sale of $6,000 worth of goods under cost, although openly to casual customers, and during thirty days, was a disposition of property to defraud some creditors, where the defendant was in debt $10,000, as to justify the issuing of the warrant of attachment in question, although it is nothing like as strong as the evidence of an intended removal of goods for a similar purpose was in *Mott* agt. *Lawrence*, (17 *How. R.*, 559,) where an attachment was set aside for the grounds of issuing it being insufficient. The supplementary affidavits on the part of the plaintiffs do not strengthen their case much. They consisted in part of the valuation by several persons conversant with the dry goods of the defendants' stock, by looking at them on the shelves, without any further examination.

These witnesses undertake to pronouuce upon them as shop-worn, and the relics of a good stock, and to state that the best and most saleable goods are gone. Of course it is difficult for an inexperienced person to set limits to the judgment and penetration of an expert, but it is very difficult to imagine how any one could ascertain from what goods were in the store, from what had been there, or how they were shop-worn, without examining them, and the process of doing so could surely be explained to the unlearned. There has been abundance of time since the sheriff was in possession to take an inventory and ascertain the value of material. The fact that the plaintiffs were once prevented by the person in charge, would not have prevented them from applying to the sheriff for his removal if necessary, particularly after the directions of such sheriff, given by him.

The plaintiffs seem *to admit* that the goods bought of them in November and December, at least, are still in the shop, by offering to take them back in satisfaction. The

O'Reilly agt. Freel.

plaintiffs own affidavit in regard to the statement of one of the defendants' clerks, (McGowan,) is denied by such clerk. His statement that the defendant sought him to make purchases is denied by the latter. The sale of goods at Terre Haute is admitted by the defendant, but proved to have taken place in November last. The conversation between one of the plaintiffs (Stephen O'Reilly) and the defendant, reported by an unusual effort of memory by a Mr. Kross, (who does not seem to have taken any minute of it in writing,) in the form of question and answer, was somewhat inqusitorial and might have provoked the defendant's replies from its tone; at all events, did not intend to show any fraudulent disposition of property, although it might to prove an indisposition to satisfy the plaintiff. But the affidavits on the part of the defendant contradict everything material on the other side to the issue of a past or a future fraudulent disposition of property. They establish, by parties who are familiar with the defendant's stock, and have daily handled it for a long time past, that it is worth from $15,000 to $20,000. Their statement, it is true, is general, but it is opposed to an equally general one. The defendant's clerks also testify, that instead of $200 worth of goods a day, the defendant has not sold over $30 worth for the last thirty days, and they prove the dullness of the business. Sales under the original cost are also denied, except as to old goods out of fashion and difficult of sale. The representations to the plaintiffs on which they allege goods were sold to the defendant are also denied. And the whole evidence contained in all the affidavits on both sides, show that the plaintiff, Stephen O'Reilly, could not have known the facts to which he swore positively in the affidavit on which the warrant of attachment was obtained. There is, therefore, no preponderance of evidence to sustain them.

There may be evidence enough before me to establish that the defendant intends to retain control of his property as long as the indulgence of his creditors and the law may

permit : that he has found or will find it difficult to meet all his engagements as they have become or may become due; that he has made promises to pay which he has broken, and perhaps that he is in a precarious situation if pressed by his creditors.    But, as I have before said, there is no such evidence before me of hurry, secresy and sacrifice in the disposition of his property as to warrant the deduction that he intends to withdraw from the grasp of the law his property, when his creditors are in a position to seize it.    Until then, he is the owner, and entitled to dispose of it as he thinks proper, provided he does not violate any positive law.    The attachment must be dissolved with $10 costs.

In the case of *George A. Wickes et. al.* agt. *The same defendant,* the court said :    " The facts in this case are so nearly similiar to that in *O'Reilly &c.,* agt. *The same defendant,* that the same disposition must be made of the motion by granting it with $10 costs.